IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SELECTIVE INSURANCE COMPANY,
As subrogee of SMULLENS SALVAGE
AND TOWING,

    Plaintiff and Third-Party Plaintiff

v.

EMPIRE COMFORT SYSTEMS

    Defendant, Third-Party Plaintiff,
    and Cross Defendant

                                    Civil Action No.
                                    WMN 03 CV 178

v.

BSH Electrodomesticos Espana, S.A.

    Defendant

v.

SHARP ENERGY, INC.

    Defendant, Third-Party Defendant,
    and Cross Claimant

                        *    *    *    *

**PLAINTIFF'S RESPONSES TO
REQUEST FOR ADMISSION OF FACTS**

To:    The Empire Comfort Systems, Inc. and BSH Electrodomesticos Espana, S.A.

From: Selective Insurance Company, as subrogee of Smullens Salvage and Towing



REQUEST NO. 1: BSH Electrodomesticos Espana, S.A. ("BSH"), then known as Safel, entered into a distributorship agreement with Sharp Energy, Inc. ("Sharp") for the sale of room heaters beginning in 1988.

RESPONSE: **After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 1. The Request is, therefore, denied.**

REQUEST NO. 2: One of the room heaters to be sold was an 18,000 BTU unvented room heater known by the trade names of Super Ser P-18 and Corcho CH-18.

RESPONSE: **After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 2. The Request is, therefore, denied.**

REQUEST NO. 3: The American Gas Association Laboratories is an industry group that tests gas appliances to standards set by the American National Standards for Gas-Fired Room Heaters.

RESPONSE: **Admitted.**

REQUEST NO. 5: A Super Ser P-18 was submitted by Safel to the American Gas Association Laboratories and was certified on November 30, 1988 by the American Gas Association Laboratories as meeting A.G.A and ANSI testing standards.

RESPONSE: **Admitted that the heater was submitted by Safel and certified as complying with applicable parts of the standards related to its design.**

REQUEST NO. 6: At the same time, the American Gas Association Laboratories granted a certification by extension to the identical model Corcho CH-18 for Empire Comfort Systems, Inc. ("Empire").

**RESPONSE:** Denied. An extension was granted; not a certification.

**REQUEST NO. 7:** Empire sold the Corcho CH-18 unvented room gas heater from 1988 through 1994.

**RESPONSE:** After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 7. The Request is, therefore, denied.

**REQUEST NO. 8:** From 1988 through 1994, Empire sold 40,909 Corcho CH-18 units.

**RESPONSE:** After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 8. The Request is, therefore, denied.

**REQUEST NO. 9:** In 1994, Empire began making an unvented room gas heater very similar to the Corcho CH-18 known as the Empire SR-18.

**RESPONSE:** After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 9. The Request is, therefore, denied.

**REQUEST NO. 10:** From 1994 through 2006, Empire sold 103,581 SR-18 unvented gas room heaters.

**RESPONSE:** After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 10. The Request is, therefore, denied.

**REQUEST NO. 11:** The subject Corcho CH-18 gas room heater, serial number 831873953, was manufactured in 1987 by BSH.

**RESPONSE:** Admitted.

**REQUEST NO. 12**:  The subject Corcho CH-18 gas room heater was sold by BSH to its American distributor--Empire Comfort Systems, Inc. of Bellevue, Illinois.

**RESPONSE**: **After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 12. The Request is, therefore, denied.**

**REQUEST NO. 13**: Empire sold the subject Corcho CH-18 gas room heater it to its United States' distributor--Sharp Energy, Inc., then known as Chesapeake Utilities, Inc.

**RESPONSE**: **After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 13. The Request is, therefore, denied.**

**REQUEST NO. 14**:  The subject Corcho CH-18 gas room heater was sold by Sharp to Smullen Salvage and Towing ("Smullen") in February, 1990.

**RESPONSE**: **Admitted.**

**REQUEST NO. 15**:  In 1990, Smullen operated a used-car parts business from a warehouse in, Princess Anne, Maryland.

**RESPONSE**: **Admitted.**

**REQUEST NO. 16**:  Smullen's warehouse contained a two-story wood-paneled office.

**RESPONSE**: **Admitted.**

**REQUEST NO. 17**: The first floor of the office was used for sales functions.

REQUEST NO. 18: The second story of the office was used for accounting functions.

REQUEST NO. 19: The area outside the office in the warehouse was where the used automobile parts were stored.

**RESPONSE**: **Admitted.**

**REQUEST NO. 18:** The second story of the office was used for accounting functions.

**RESPONSE: Admitted.**

**REQUEST NO. 19:** The area outside the office in the warehouse was where the used automobile parts were stored.

**RESPONSE: Admitted.**

**REQUEST NO. 20:** The subject Corcho CH-18 room heater was installed by Sharp in the first floor office on a paneled wall in February, 1990.

**RESPONSE: Admitted.**

**REQUEST NO. 21:** An instructional manual for the subject Corcho CH-18 room gas heater was provided to Smullen at the time of the installation.

**RESPONSE: After reasonable investigation, plaintiff is unable to admit or deny the accuracy of the facts set forth in Request for Admission No. 21. The Request is, therefore, denied.**

**REQUEST NO. 22:** In 1993, Sharp installed a blower motor on the subject Corcho CH-18 room gas heater.

**RESPONSE: Admitted.**

**REQUEST NO. 23:** The subject Corcho CH-18 room gas heater operated without any problems until November 1, 2000 when it was damaged in a fire at Smullen's warehouse.

**RESPONSE: Denied. The heater caused the fire on November 1, 2000; it was not damaged in the fire. Further, the heater did experience "problems" with respect to the operation of the blower and accumulation of lint, dirt, dust and other combustibles within and around the heater.**

**REQUEST NO. 24**: The fire on November 1, 2000 did extensive damage to the office area and storage area of the warehouse.

**RESPONSE: Admitted.**

**REQUEST NO. 25**: In 2000, Smullen had a policy of insurance for fire damage with Selective Insurance, Inc. ("Selective).

**RESPONSE: Admitted.**

**REQUEST NO. 26**: Selective notified Sharp of the fire, and an inspection of the fire scene was conducted by representatives of Sharp and Selective on November 10, 2000.

**RESPONSE: Admitted.**

**REQUEST NO. 27**: At the inspection on November 10, 2001, representatives of Selective and Sharp agreed that the subject wall room heater, and the framing it was attached to, would be removed by plaintiffs expert Kenneth McLauchlan, and the fire scene would be cleaned up and no longer preserved.

**RESPONSE: Denied. Plaintiff admits that representatives of Selective and a party with adverse interests, Sharp, agreed that certain evidence would be removed by plaintiff's consultant and preserved. It is denied that those representatives agreed that the fire scene would be cleaned up and no longer preserved.**

**REQUEST NO. 28**: The fire scene was cleaned up shortly thereafter by removing the office walls and the office contents as well as used auto parts that were damaged.

**RESPONSE: Denied. Plaintiff cannot respond to Request No. 28 since the phrase "cleaned up shortly thereafter" is not defined.**

**REQUEST NO. 29**: Nothing from the fire scene was retained except for the subject heater and the framing to which it was attached.

RESPONSE: Denied as stated. While the heater, framing and electrical devices associated with it were removed from the scene and preserved, other materials within the fire scene were preserved for a reasonable period of time after the fire.

REQUEST NO. 30: On November 14, 2000, Empire was first notified of the fire at the Smullen's warehouse by a representative of Sharp's insurer.

RESPONSE: Admitted. By way of further reply, Empire was requested at that time to engage investigators to visit the fire scene. The fire scene remained available for inspection by Empire's representatives for a reasonable period of time. Empire never took any effort to inspect the fire scene until January 9, 2001.

REQUEST NO. 31: When a representative of Empire visited the warehouse in January, 2001, it was an empty space. Nothing was left of the office or the storage area where the used auto parts had been kept.

RESPONSE: Admitted.

s/ Thom M. Wood
Thomas M. Wood, IV, Esquire
NEUBERGER, QUINN, GIELEN, RUBIN
& GIBBER, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202

Paul R. Bartolacci, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
(215) 665-2001
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___28___ day of ___November___, 2006, a copy of the foregoing Responses to Request for Admission of Facts was sent via first-class mail, postage-prepaid, to:

Thomas M. Wood, IV, Esquire
NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202
Attorneys for Plaintiff and Third-Party Defendant

Patricia Maher, Esquire
MAHER & ASSOCIATES
502 Washington Avenue
Suite 410 - Nottingham Centre
Towson, Maryland 21204
Attorneys for Defendant, Third-Party Defendant, and
Cross-Claimant Sharp Energy, Inc.

James A. Rothschild, Esquire
ANDERSON, COE & KING, L.L.P.
201 North Charles Street, Suite 2000
Baltimore, Maryland  21201
Attorneys for Defendant, Third Party Plaintiff, and
Cross-Defendants Empire Comfort Systems and
Defendant BSH Electrodomisticos Espana, S.A.

_____
Paul R. Bartolacci, Esquire